IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MAXMILLIAM LEDWITH,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

OPINION and ORDER

Case No. 17-cv-894-wmc

Plaintiff Maximillian Ledwith was given leave to proceed against the United States of America on a claim under the Federal Tort Claims Act ("FTCA" or "the Act"), 28 U.S.C. §§ 2671-2680, arising from a 2013 incident in which an employee of the United States, John Wiederholt, DDS, allegedly breached his duty of care in removing Ledwith's wisdom teeth. (Dkt. #9.)[1] Now before the court is the United States' motion for summary judgment on the ground that Ledwith failed to exhaust his administrative remedies timely. (Dkt. #29.) Since it is undisputed that this lawsuit is timely, and Ledwith has submitted no evidence supporting a finding that he may be excused from his failure to commence this lawsuit sooner, the court will grant defendant's motion and enter judgment in the defendant's favor.

---

[1] Plaintiff originally identified Wiederholt and his employer, Madison Community Health Center, Inc. d/b/a Access Community Health Centers, as defendants in this lawsuit. However, consistent with the provisions of 28 U.S.C. § 2679(b) and § 2679(d)(2), and without objection by the plaintiff, the United States was substituted as the sole defendant in this lawsuit and Wiederholt and Access Community Health Centers were dismissed on the ground that the exclusive remedy for these claims is an action against the United States. (Dkt. #9.)

1

UNDISPUTED FACTS[2]

**A. Ledwith's Claim**

In August of 2013, Ledwith claims that Wiederholt removed his third molars (wisdom teeth) improperly and without taking adequate precautions.[3] Specifically, he claims that Wiederholt proceeded with removal of his wisdom teeth without taking minimal sanitary precautions and that while injecting the local anesthetic during the extraction itself, Wiederholt applied an extreme amount of pressure on the temporomandibular joint ("TMJ"), piercing a nerve. Ledwith alleges that this latter case of malpractice in particular "instantly disfigured" his face. (Am. Compl. (dkt. #8) ¶ 14.) Ledwith further claims that despite asking Wiederholt to stop the procedure at that point, Wiederholt nonetheless continued to force his molar out of its socket, which "instantly and completely deranged" his TMJ. (*Id.*) Ledwith next alleges that after appearing at Wiederholt's clinic two days later an "urgent pain appointment," Wiederholt denied that he had any pain, swelling or medical condition. (*Id.* ¶ 13.) Finally, as a result of Wiederholt's malpractice, Ledwith claims to have experienced: permanent nerve damage; difficulty closing his left eye; a permanently damaged TMJ; and significant follow-up costs for procedures not covered by his insurance.

---

[2] The following facts are material and undisputed when viewed in a light most favorable to plaintiff, unless otherwise noted. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as supporting evidence.

[3] The United States' position is that Wiederholt actually removed Ledwith's wisdom teeth on August 7, 2012, but this dispute is not material for purposes of its motion as explained below.

2

### B. Procedural History

In August 2016, Ledwith filed a complaint with the Wisconsin Department of Safety and Professional Services. Attached to that complaint was a letter, threatening to sue Dr. Wiederholt and stating "I am considering filing a lawsuit in the courts." (*See* dkt. #33-1, at 7.) On February 24, 2017, Ledwith then filed suit against Wiederholt in Dane County Circuit Court.

After the United States removed that suit to federal court, it moved to dismiss based on Ledwith's failure to file an administrative claim. On September 26, 2017, after Ledwith neither responded to that motion, nor did he attend the preliminary pretrial conference, this court dismissed the case without prejudice for failure to prosecute.

Finally, Ledwith filed: an administrative claim with the United States Department of Health and Human Services ("HHS") on March 17, 2017; this lawsuit on November 22, 2017; and an amended complaint on April 11, 2018.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (brackets omitted). During summary judgment, disputed facts are viewed in a light most favorable to the

plaintiff as the non-moving party; however, this treatment does not extend to inferences supported by only speculation or conjecture. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019). On the record before this court in this case, summary judgment must be entered in defendant's favor.

I.  **Applicable Statute of Limitations**

The United States' argues that Ledwith's pleadings concede his claim accrued in 2013 at the latest, pointing to Ledwith's assertions about the significant and intense amount of pain he suffered because Wiederholt pierced a nerve and used an extreme amount of pressure, as well as his alleged, immediate disfigurement due to damage to his TMJ. The United States then points out the FTCA gives a claimant two years to present his claim in writing to the appropriate federal agency once a tort claim accrues. 28 U.S.C. § 2401(b). Thus, the United States asserts Ledwith's failure to file his administrative claim until March 2017 means, his claim is barred by the FTCA's two-year statute limitations. In opposition, Ledwith argues that his delay in filing his claim should be excused by equitable tolling and the discovery rule. Alternatively, Ledwith argues his claim does not accrue fully until Dr. Wiederholt provides "corrective care." The court will address these arguments in turn, after first clarifying the applicable statute of limitations.

As this court has previously recognized, the Wisconsin statute of limitations applies to FTCA claims that occurred in this state, since (1) that Act expressly incorporates state substantive law and (2) Wisconsin's statute of limitations *is* substantive. *Feltz v. United*

*States*, No. 13-cv-749, 2017 WL 1215454, at *1 (W.D. Wis. Mar. 31, 2017). In *Feltz*, this court accepted the United States' argument that Wisconsin's three-year statute of limitations for medical malpractice and wrongful death applied to that plaintiff's FTCA claim, because: (1) the Seventh Circuit recognized that the FTCA "expressly incorporates" the substantive law of the state in which the alleged tort occurred, *Augutis v. United States*, 732 F.3d 749, 754 (7th Cir. 2013); and (2) the Wisconsin Supreme Court held that Wisconsin statute of limitations are substantive, not procedural, *Wenke v. Gehl*, 2004 WI 103, 274 Wis. 2d 220, 682 N.W.2d 405. *Id.* at *1-2; *see also Scholz v. United States*, No. 16-cv-1052, 2019 WL 2303769, at *13 (E.D. Wis. May 30, 2019) (citing *Feltz* and applying Wisconsin's three-year statute of limitation for a medical malpractice claim). The United States has not explained why it took the position that the two-year statute of limitations applies, but this omission is of no moment since even under Wisconsin's three-year statute of limitations for malpractice claims, Wis. Stat. § 893.55(1m), Ledwith's lawsuit is untimely, and none of his arguments in opposition save the claim from dismissal.

### A. Equitable Tolling

First, Ledwith argues that the court should apply the equitable tolling doctrine to deem his claim timely. *See United States v. Kwai Fun Wong*, 575 U.S. 402, 135 S. Ct. 1625, 1638 (2015) (FTCA statute of limitations is not jurisdictional, and equitable tolling is permitted). Unfortunately for plaintiff, the Supreme Court permits a court to pause a running statute of limitations period only "when a party has pursued [her] rights diligently but some extraordinary circumstance prevents [her] from meeting a deadline." *Id.* at 1630-

31 (internal quotation marks and citation omitted). Worse for plaintiff, the "Supreme Court recently reiterated that [the extraordinary circumstances] element is met 'only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control.'" *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. ___, 136 S. Ct. 750, 756 (2016) (emphasis in original)). If that were not restrictive enough, the Supreme Court also cautions that the equitable tolling doctrine is to be applied "sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *see also Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) ("Equitable tolling is an extraordinary remedy and so is rarely granted.") (internal quotation marks and citation omitted). Finally, as if that were not daunting enough, *plaintiff* bears the burden of establishing the equitable tolling elements. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Ledwith principally argues that his mental illnesses prevented him from pursuing his claim sooner. However, "mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon*, 77 F.3d 189, 191-92 (7th Cir. 1996) (citations omitted). Ledwith has failed to make such a showing here, relying primarily on his own conclusory assertions about his mental health, plus some 2018 and 2019 records related to his mental health care and qualification for disability. In particular, Ledwith submits:

- Two affidavits that assert: he is enrolled in Wisconsin's Comprehensive Community Services ("CCS") program; he has a severely reduced residual functional capacity; and he cannot meet basic daily demands of self-care, even with the assistance of aides, due to his agoraphobia. (Ledwith Affs. (dkt. ##53, 54).)

6

- Notes from Ledwith's psychotherapist, Susan Cooper, from June of 2019, reporting that: he was practicing breathing and distraction skills to address his anxiety; she worked with him to address his anxieties about dental work; and he had difficulties regulating his emotions related to the incident of medical malpractice alleged here. (Exs. B, C (dkt. #54-2, 54-3).)

- Notes from Ledwith's therapist, Anne Erhardt, who wrote in June of 2019 that she worked with Ledwith on decision-making skills to address his anxiety. (Ex. D (dkt. #51-4).)

- Ledwith's representations that: (1) an administrative law judge deemed him disabled for purposes of social security in 2018; and (2) he has been diagnosed with schizophrenia, post-traumatic stress disorder and agoraphobia. Ledwith further claims that he suffered from these conditions at the time Wiederholt removed his wisdom teeth, citing as support a letter he sent to Cooper and Erhardt, asking for their help in this lawsuit due to his schizophrenia. (Dkt. #51-4.)

- A statement of his monthly social security income (dkt. #51-2), and a discharge summary dated January 13, 2017, from UW Health psychiatry, noting Ledwith's diagnoses as "Other Specified Anxiety Disorder, Presumptive OCD and somatoform disorder, Unspecified Schizophrenia Spectrum and Other Psychotic Disorder." (Dkt. #51-5.)

In his briefing, Ledwith additionally asserts that he has been deemed disabled since 2008, and his records show a history of disability long before then.

Even accepting as undisputed that Ledwith has been dealing with various mental health challenges for over a decade, the court can still not conclude on this record that those challenges actually *prevented* him from either appreciating that he had the right to pursue this lawsuit or initiating this lawsuit. To start, the 2019 notes Ledwith provided from his care providers do not tend to prove that at any time between August 2013 and November of 2017, he was suffering from a mental impairment that prevented him from understanding that he had the ability to bring a claim. To the contrary, beyond noting that Ledwith's anxiety may increase when he discusses his TMJ injury, these notes make

7

no mention of Ledwith's mental health history. Critically, the notes do not reflect an acknowledgment or even speculation that Ledwith's mental health challenges were so severe at any time that he may have been unable to understand his possible medical malpractice claim based on Dr. Wiederholt's allegedly bungled removal of his wisdom teeth, nor that he was unable to take the steps necessary to pursue a claim against him.

As for Ledwith's evidence related to the findings of the administrative law judge, the court accepts Ledwith has been diagnosed with schizophrenia, anxiety, agoraphobia and other conditions, but he has offered no evidence explaining *how* these conditions prevented him from understanding his right to pursue legal action for Dr. Wiederholt's tooth extractions or prevented him from pursuing such an action from 2013 until 2017. More specifically, Ledwith's evidence does not reflect a concern by any of his mental health providers that Ledwith might be unaware of his surroundings or incapable of taking action with respect to his legal rights. Instead, Ledwith's submissions indicate that in 2018 and 2019, he was receiving counseling to deal with his anxiety, and he was collecting social security benefits. That evidence has *no* bearing on Ledwith's claimed mental impairment for purposes of proving a basis for equitable tolling between 2013 and 2017.

At bottom, the *only* evidence Ledwith submitted that suggests any limitations posed by his mental health challenges during the relevant period of time are his own assertions of agoraphobia and need for a caretaker. However, even Ledwith does not attest that he was *unaware* of his legal rights associated with his alleged injury, or that his challenges actually prevented him from seeking to pursue those rights. What is left are just his conclusory, self-serving assertions that his mental health hindered his pursuing this action

sooner, which does not permit a finding that any mental impairment prevented him, in fact, from filing this lawsuit continuously from 2013 until November 2017. *See Hewitt v. Morgan*, No. 08-cv-172-BBC, 2008 WL 4175031, at *1 (W.D. Wis. Apr. 22, 2008) ("Petitioner's self-serving allegations of mental incapacitation fall far short of showing that he was *incapable* of acting on his legal rights during the entire seven years between the time he was convicted and the time he filed a motion for postconviction relief in state court."). Accordingly, Ledwith's failure to come forward with a specific, causal connection between his impairments and his ability to file this lawsuit precludes finding his mental impairments to be grounds for equitable tolling. *See Moreland v. Meisner*, No. 16-cv-379-PP, 2020 WL1158623, at *7 (E.D. Wis. Mar. 10, 2020) (petitioner not entitled to tolling because he failed to show "how his schizophrenia actually impaired his ability to pursue his claims"); *Winston v. Pamela H.*, No. 16-cv-610-JDP, 2016 WL 6808181, at *2 (W.D. Wis. Nov. 17, 2016) (plaintiff not entitled to tolling because he failed to explain how his illness "actually prevented him from bringing his claims, or so continuously and severely affected him that he was unable to make any effort to pursue his claims").

Finally, assuming, for the sake of argument, that Ledwith could show a causal connection between his mental impairments and his inability to file this lawsuit timely, the evidence of record does not support a finding that Ledwith pursued his rights diligently once he became aware of his claim. Rather, it suggests the opposite. To start, Ledwith does not explain his failure to file this lawsuit in August 2016, when he submitted his complaint to the Wisconsin Department of Safety and Professional Services and stated his intent to file a lawsuit. Ledwith also does not explain why he failed to file this lawsuit for

9

more than a *year* after he submitted that letter, nor has he articulated *how* he attempted to take action to commence this action between August 2016 and November of 2017 to file this lawsuit and was somehow thwarted. Likewise, Ledwith has no explanation for filing his administrative claim in March of 2017, but still not commencing this lawsuit for another eight months.

On this record, Ledwith not begun to show that his mental impairment actually prevented him from recognizing or acting upon his right to bring this lawsuit, nor has he shown anything amounting to diligent pursuit of his rights once he was aware of them. Accordingly, Ledwith is not entitled to equitable tolling of Wisconsin's three-year statute of limitations.

### B. Discovery Rule

Next, Ledwith argues that his claim did not accrue at the time Dr. Wiederholt extracted his wisdom teeth because he did not discover his injuries at that time. Under federal law, the discovery rule "starts the statute of limitations running only when the plaintiff learns that he[ has] been injured, and by whom." *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010) (citing *United States v. Kubrick*, 444 U.S. 111 (1979); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)); *Khan v. United States*, 808 F.3d 1169 (7th Cir. 2015) ("The statute of limitations begins to run when a plaintiff knows she's been injured.") (citation omitted). Thus, a medical malpractice claim accrues under the FTCA when "a plaintiff [is] in possession of the critical facts that he has been hurt and who has inflicted the injury." *United States v. Kubrik*, 444 U.S. 111, 122 (1979).

Here, however, Ledwith's own allegations contradict the notion that he did not perceive his possible malpractice claim against Wiederholt. Specifically, Ledwith alleges that he (1) was in extreme pain during the extraction, (2) requested that Wiederholt stop the procedure, (3) noticed that his face was disfigured immediately, and (4) visited Wiederholt's office two days later seeking pain relief.

Because he is not a medical professional, Ledwith suggests that his statements about immediate, excruciating pain, as well as perception of injuries to the TMJ and a nerve that "instantly disfigured" is face, have no bearing on whether his claim accrued at the time of the procedure. Yet Ledwith's lack of medical expertise does not begin to explain how he could have been unaware that Dr. Wiederholt had injured him, given that his own descriptions of the resulting pain and disfigurement would have put any reasonable person on notice that Wiederholt's handling of his tooth extractions were improper or, at the very least, required further investigation. *See Blanche v. United States*, 811 F.3d 953 958 (7th Cir. 2016) (medical malpractice claim accrues when the "plaintiff has enough information to suspect, or a reasonable person would suspect, that the injury 'had a doctor-related cause'") (quoting *Kubrick*, 444 U.S. 111, 123 (1979)). In fairness, Ledwith now asserts that he only "later discovered" Dr. Wiederholt had injured his facial nerve, and he did not appreciate that his TMJ was injured at the time his teeth were removed, but Ledwith did not need to understand the *exact* nature and severity of his injuries to understand that he was injured. Rather, "'[o]nce armed with knowledge that he has been injured and by whom, the potential malpractice plaintiff has reason to believe that he may have a legal claim; and he then has the statutory period in which to conduct the necessary investigation

11

and prepare and file a suit.'" *Massy v. United States*, 312 F.3d 272, (7th Cir. 2002) (quoting *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994). Since Ledwith makes no colorable claim that he did not perceive his injury at the time Dr. Wiederholt extracted his wisdom teeth, the court agrees that his claim accrued in August of 2013 at the latest -- over four years before he initiated this lawsuit.

### C. Corrective Care

Ledwith's last argument to save his untimely claim is a complete non-starter. He argues that the statute of limitations does not begin to run until Dr. Wiederholt provides corrective care. As defendant point out, however, there is *no* basis in the law to support this argument. Having rejected each of Ledwith's arguments seeking to justify his failure to file this lawsuit within Wisconsin's three-year statute of limitations, the court must grant the United States' motion for summary judgment.

## II. Ledwith's Motion for Assistance in Recruiting Counsel

Finally, Ledwith requests the court's assistance in recruiting counsel, explaining that he needs counsel due to his reduced residual mental functional capacity. In support, Ledwith submitted a letter from therapist Erhardt, who explains that she has been involved in Ledwith's mental health treatment since the spring of 2019. While Erhardt provides a general overview of Ledwith's treatment plan, which involves working on processing his emotional experiences, implementing healthy coping skills, and monitoring the efficacy of

his psychotropic medications, she does not provide details about the limits of his cognitive abilities or ability to function in day-to-day life.

Civil litigants have no constitutional or statutory right to the appointment of counsel. *E.g., Ray v. Wexford Health Sources, Inc.,* 706 F.3d 864, 866-67 (7th Cir. 2013); *Luttrell v. Nickel,* 129 F.3d 933, 936 (7th Cir. 1997). However, at the court's discretion, it may decide to help recruit counsel to assist an eligible plaintiff who proceeds under the federal in forma pauperis statute. *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent an indigent civil litigant *pro bono* publico.")

Before deciding whether to recruit counsel, however, a court must find that the plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful. *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). Ledwith has met this threshold requirement (*see* dkt. #22, at 4), but the court is not persuaded that litigating this lawsuit has been beyond Ledwith's capabilities. *See Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc) (the central question in deciding whether to request counsel for an indigent civil litigant is "whether the difficulty of the case–factually and legally–exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself"). To the contrary, Ledwith described his claim clearly and raised multiple, understandable arguments in opposition to the United States' motion for summary judgment, illustrating his ability to recall relevant facts and apply legal principles related to the timeliness of his claim. Additionally, the court allowed Ledwith the opportunity to submit additional briefing and evidence in opposition to defendants' motion for summary judgment, which further demonstrated his understanding of the facts and legal standards

relevant in opposing the government's arguments. That Ledwith was ultimately unsuccessful in his lawsuit is not evidence that he needed the assistance of counsel to prosecute it. Accordingly, Ledwith's request for assistance in recruiting counsel will be denied.

ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment (dkt. #29) is GRANTED.

2) Plaintiff Maxmillian Ledwith's second motion for assistance in recruiting counsel (dkt. #56) is DENIED.

3) Plaintiff's motions to stay expert disclosure deadline (dkt. ##59, 60) and for protective order and quash notice of deposition (dkt. #62) are DENIED AS MOOT.

4) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 24th day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge